IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JEANETTE RENÉ ABNEY, | ) | |
| Administratix of the Estate of Gerald | ) | |
| Benjamin Abney, Jr., and | ) | |
| THE STATE OF NORTH CAROLINA | ) | |
| ex rel. JEANETTE RENÉ ABNEY, | ) | |
| Administatrix of the Estate of | ) | |
| Gerald Benjamin Abney, Jr., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:04CV00652 |
| | ) | |
| DEPUTY JOEL RODNEY COE, | ) | |
| Individually and in his official capacity | ) | |
| as a Deputy of the Randolph County | ) | |
| Sheriff's Department, | ) | |
| SHERIFF LITCHARD HURLEY, | ) | |
| Individually and in his official capacity | ) | |
| as Sheriff of Randolph County; | ) | |
| and WESTERN SURETY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OPINION

Tilley, Chief Judge

This case arises out of a tragic incident in which a police car driven by

Deputy Joel Rodney Coe of the Randolph County Sheriff's Department collided

with Gerald Benjamin Abney's motorcycle at the end of a police pursuit, resulting

in Mr. Abney's death.  Magistrate Judge P. Trevor Sharp issued his Recommended

Ruling on the Defendants' Motions for Summary Judgment on December 15, 2005

[Doc. # 83].[1]

The Magistrate Judge recommended that Deputy Coe's Motion for Summary Judgment [Doc. # 40] be granted in part and denied in part. Specifically, he made the following recommendations: (1) summary judgment should be granted to Deputy Coe in his official capacity on the federal claims made under 42 U.S.C. § 1983 in counts I, II, and III of the First Amended Complaint; (2) summary judgment should be granted to Deputy Coe in all capacities on the state law claim of assault and battery in count VIII; (3) summary judgment should be denied to Deputy Coe in his individual capacity for counts I, II, and III; and (4) summary judgment should be denied to Deputy Coe in both his individual and official capacities for the state law claims of gross negligence and wrongful death in counts VII and IX. In addition, the Magistrate Judge recommended that Sheriff Hurley's Motion for Summary Judgment [Doc. # 37] be granted as to all claims made against him in both his individual and official capacities. Finally, the Magistrate Judge recommended that Western Surety Company's Motion for Summary Judgment [Doc. # 37] be granted as to count VIII and denied as to counts VII and IX of the First Amended Complaint.

Both parties have filed timely objections to the Magistrate Judge's

---

[1] Defendants Sheriff Litchard Hurley and Western Surety Company filed a Motion for Summary Judgment on August 26, 2005 [Doc. # 37]. The Plaintiff responded on October 12, 2005 [Doc. # 53] and the Defendants filed their Reply on November 3, 2005 [Doc. # 70]. Defendant Joel Rodney Coe filed a Motion for Summary Judgment on August 26, 2005 [Doc. # 40]. The Plaintiff responded on October 12, 2005 [Doc. # 55] and Defendant Coe filed his Reply on November 3, 2005 [Doc. # 69].

Recommended Ruling [Doc. #s 95, 96]. The Plaintiff has also filed a Motion to Strike the Defendants' Objections to the Recommended Ruling [Doc. # 98].[2] The Court has conducted a *de novo* review of those issues to which an objection was made and, for the reasons set forth below, will adopt the Recommendation of the Magistrate Judge. In addition, the Plaintiff's Motion to Strike the Defendants' Objections will be DENIED.

## I.

The Court adopts the factual findings of the Magistrate Judge as they are set forth in the Recommended Ruling. (See Recommended Ruling, 2-12.) In brief, these findings are as follows: on August 3, 2001, at approximately 4:45 p.m., Deputy Coe, an officer with the Randolph County Sheriff's Department, was traveling northbound on Old Country Farm Road. The weather was clear and the roads were dry. Deputy Coe observed a motorcyclist, later identified as Gerald Benjamin Abney, traveling southbound on the same road. He saw Mr. Abney cross over the double yellow line as he passed several vehicles. Deputy Coe turned his patrol car around and activated his blue lights and siren in an attempt to stop the motorcyclist. When he temporarily lost sight of Mr. Abney, Deputy Coe deactivated his lights and siren and was proceeding down Green Farm Road toward Old Lexington Road when he heard the motorcycle going down a hill.

---

[2] The Defendants filed a Response in Opposition to Plaintiff's Motion to Strike [Doc. # 100] on February 6, 2006. Plaintiff filed a Reply to the Defendants' Response on February 17, 2006 [Doc. # 102].

Deputy Coe encountered Mr. Abney again near the intersection of Old Lexington Road and Caraway Mountain Road. Mr. Abney had stopped at a stop sign, but started moving again as Deputy Coe approached. Deputy Coe could not make out the motorcycle's tag number at this point. Again, he activated his lights and siren in an attempt to stop Mr. Abney. Mr. Abney made a left turn at the intersection of Caraway Mountain Road and Green Farm Road and Deputy Coe followed.

There is disputed evidence concerning the turn onto Green Farm Road. During his deposition, Deputy Coe testified that as the vehicles made the turn, the motorcycle overshot the turn and entered the grassy shoulder of Green Farm Road; it then turned around, reentered the roadway and sideswiped the patrol vehicle on the passenger side, dislodging the rearview mirror. Some physical evidence and the testimony of one eyewitness tends to corroborate this testimony. Plaintiff, on the other hand, relies on evidence that after Mr. Abney turned onto Green Farm Road, he slowed down and began to pull his motorcycle to the side of the road. Two eyewitnesses, Angela and Terry Rush, testified that Deputy Coe's patrol car turned onto Green Farm Road at an angle and "bumped" the back end of Mr. Abney's motorcycle while it was slowly moving, forcing the motorcycle onto the shoulder and into the grass. According to these witnesses, the motorcycle righted itself after wobbling and then took off again, with Deputy Coe in pursuit.

As Mr. Abney continued down Green Farm Road toward Old Lexington

4

Road, Deputy Coe called the communications center to report that a motorcycle had hit his patrol car and that he was in pursuit. He stated that he was "trying to get him stopped." Mr. Abney ran a stop sign at Green Farm Road and Old Lexington Road and made a right turn onto Old Lexington Road. Deputy Jerry Rozier heard Deputy Coe's call and proceeded to the area in order to provide assistance. Deputy Rozier was traveling down Old Lexington Road when he saw the motorcyclist and Deputy Coe traveling in the opposite direction. Deputy Rozier moved his patrol car over the center line in an attempt to stop Mr. Abney. He opened his door and got out of his patrol car, thinking that Mr. Abney was going to stop. However, Mr. Abney swerved around Deputy Rozier's patrol car. Deputy Rozier then joined the pursuit, falling behind Deputy Coe's patrol car.

The chase proceeded and, according to Deputies Coe and Rozier, Mr. Abney ran a stop sign at the intersection of Old Lexington Road and Highway 64. Deputy Coe's patrol car was directly behind Mr. Abney's motorcycle as they traveled west on Highway 64. Traffic on Highway 64 was fairly heavy and the uncontroverted evidence shows that neither Deputy Coe nor Mr. Abney exceeded the speed limit during this part of the pursuit. The pursuit continued for approximately six-tenths of a mile. At Mount Shepherd Road, Mr. Abney made a wide right turn. Some eyewitnesses testified that another vehicle made the turn directly ahead of Mr. Abney and began to pull onto the shoulder. Other eyewitnesses did not see this third vehicle. Deputy Coe accelerated during the turn onto Mount Shepherd Road.

5

Within seconds, Deputy Coe's vehicle collided with Mr. Abney's motorcycle.  Mr. Abney was later pronounced dead at the scene.

Deputy Coe testified that as he turned onto Mount Shepherd Road, his view of Mr. Abney was temporarily obstructed by the terrain and by a third vehicle sitting on the side of Mount Shepherd Road.  When he saw the motorcycle again, it was wobbling and had lost speed and, although he tried to avoid a collision by breaking and turning to the left, it was too late.  Other witnesses believed that the motorcycle did not wobble prior to being hit by Deputy Coe.  One eyewitness, Richard Hunt, who was traveling on Highway 64 testified that it appeared that Deputy Coe intended to bump the motorcycle, although he could not say for sure.

Sheriff Hurley has been the Sheriff of Randolph County since 1989 and has final policymaking authority in the Sheriff's Department.  During his tenure, all deputy sheriffs have been required to complete the Basic Law Enforcement Training ("BLET") program within one year of being sworn in as a deputy sheriff. They also participate in a field officer training program run by the Randolph County Sheriff's Department.  During the field training program, the training officer discusses the policies and procedures of the Sheriff's Department, including but not limited to those policies and procedures that relate to excessive force and vehicular pursuits.  In addition, all deputies must take a defensive driving course and be recertified annually in defensive driving.

According to Sheriff Hurley, the Randolph County Sheriff's Department

6

maintains a verbal vehicular pursuit policy. This policy is as follows:

> If there is a felony committed, a serious misdemeanor, or if the individual is endangering or has endangered the motoring or general public, then the deputy may make the decision to chase and/or pursue the suspect. During the pursuit, the deputy must notify communications of vehicle tag number, description of vehicle, location that officer is stopping or pursuing the vehicle. The officer will then stay in contact with communications as to location, conditions of traffic, etc. If the offense is minor, the officers have the authority to continue the chase in their discretion. The deputies are encouraged to get a tag number and identification of the suspect if possible and charge the suspect later. North Carolina state law requires that any time an officer is running emergency traffic or chasing/pursuing an individual then he or she must activate his or her blue lights and siren. Any officer can call off a chase at any time if it is not safe. A supervisor monitors the pursuit and any supervisor can call off a chase at any time. The officer should consider the following factors: speed, weather conditions, traffic levels, the safety of the motoring public, the type of crime committed and any other factors that may become evident as the pursuit continues.

Although a number of officers confirmed the existence of this policy, one officer denied being aware of it.

The verbal vehicular pursuit policy does not directly address the matter at issue in this case, that is, whether an officer may use what is known as a pursuit intervention tactic ("PIT") during a chase. A PIT involves bumping, ramming or sideswiping a vehicle in order to end a chase. Sheriff Hurley testified that the use of such tactics to end a vehicular pursuit is strictly prohibited. He also testified that he did not know whether his deputies had been instructed on this policy, but he expected his majors and lieutenants to instruct them on it. Several officers testified that it was their understanding that striking moving vehicles to end a

chase was permitted only in extreme situations, such as when a felony had been

committed and the suspect was seriously endangering the lives of officers or

others.  However, one officer, Captain William Bunting, testified that the Randolph

County Sheriff's Department did not have a policy prohibiting the use of PIT

maneuvers and that he had heard of officers using such a tactic.  He identified

three incidents in which a patrol car struck a pursued vehicle: an incident involving

Captain Doug Sillmon, an incident involving Captain Mark Brady and the present

case.

The first incident occurred sometime in 1990.  Captain Sillmon blocked an

exit to a parking lot in order to prevent a drug trafficking suspect from escaping.

The suspect tried to leave the scene by hitting Captain Sillmon's patrol car.  The

suspect was apprehended and never made a complaint about the incident.  The

second incident occurred on July 19, 1994.  Captain Brady was pursuing a suspect

who was throwing evidence out of his window and committing a number of traffic

violations.  The suspect made a right turn and braked suddenly, causing Captain

Brady to lightly impact the back of the suspect's car.  This incident did not cause

any personal property damage and did not result in a complaint.

II.

The plaintiff, Jeanette René Abney, is the Administratrix of Mr. Abney's

estate.  She filed suit against Deputy Coe, Sheriff Hurley and Western Surety

8

Company[3] on July 16, 2004 [Doc. # 1]. Ms. Abney has made the following claims against Deputy Coe in her First Amended Complaint [Doc. # 28]: (1) a claim under 42 U.S.C. § 1983 for excessive force in violation of Mr. Abney's right to be free from unreasonable seizures (count I); (2) a claim under 42 U.S.C. § 1983 for wrongful death (count II); (3) a claim under 42 U.S.C. § 1983 for survival (count III); (4) a state law tort claim for gross negligence (count VII); (5) a state law tort claim for assault and battery (count VIII); and (6) a state law tort claim for wrongful death (count IX). In addition, Ms. Abney has asserted the following claims against Sheriff Hurley: (1) a claim under 42 U.S.C. § 1983 that Deputy Coe's constitutional violation was a result of inadequate training and supervision by Sheriff Hurley (count IV); (2) a claim under 42 U.S.C. § 1983 that the Randolph County Sheriff's Department had a policy or practice that resulted in Mr. Abney's death (count V); and (3) a claim under 42 U.S.C. § 1983 that the Randolph County Sheriff's Department improperly trained its officers to use excessive force (count VI). On August, 26, 2005, both Defendants filed Motions for Summary Judgment in this case. [Doc. #s 37 & 40].

On January 4, 2006, a settlement conference was held during which the Defendants informed the Court that they had included several new cases in their Objections to the Magistrate Judge's Recommended Ruling [Doc. # 96]. The Court

_____

[3] Defendant Western Surety company is joined as the writer of an Official Bond of surety for Sheriff Hurley pursuant to N.C. Gen. Stat. § 58-76-5.

therefore gave the Plaintiff twenty days to respond to the Defendants' Objections. In her Response to the Defendants' Objections [Doc. # 97], the Plaintiff contends that the Defendants raised an argument in their Objections that was never raised before the Magistrate Judge. She has therefore moved to strike the Defendants' Objections [Doc. # 98]. However, although United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992) requires that the Motion to Strike be denied, an examination of the objections shows them not to be newly raised. Accordingly, the Plaintiff's Motion to Strike will be denied.

## III.

Under 28 U.S.C. § 636(b)(1), a district court is required to undertake a *de novo* review of those portions of the Magistrate Judge's Recommendation to which objections are made. It is within the authority of the court to accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1). In appropriate cases, the district court may receive further evidence or recommit the matter to the Magistrate Judge with instructions. Id.

## IV.

The Defendants' objections can be grouped into two categories. First, the Defendants contend that the Magistrate Judge incorrectly concluded that Deputy Coe was not entitled to (1) qualified immunity for the Plaintiff's federal claims and (2) public officer's immunity for the Plaintiff's state law claims. In support of this position, they argue that Deputy Coe did not violate clearly established law when

10

he employed deadly force against Mr. Abney.  Second, the Defendants argue that the Magistrate Judge improperly considered "inadmissible evidence" in recommending that portions of Deputy Coe's Motion for Summary Judgment be denied.

A.

Courts employ a two-step analysis in determining whether an officer is entitled to qualified immunity.  <u>Jones v. Buchanan</u>, 325 F.3d 520, 526 (4th Cir. 2003) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001)).  The first question is whether the facts taken in the light most favorable to the non-moving party show that the officer's conduct violated a constitutional right.  <u>Id.</u>  If the court finds that a constitutional right has been violated, it must then determine whether the right was clearly established at the time of the events at issue.  <u>Id.</u>  If the right was not clearly established, the defendant officer is entitled to qualified immunity.  <u>Id.</u> at 527.

The Magistrate Judge found that the Plaintiff's evidence was sufficient to create a genuine issue of material fact as to whether Deputy Coe intentionally struck Mr. Abney's patrol car on Mount Shepherd Road.  (Recommended Ruling 16.)  If Deputy Coe intentionally struck Mr. Abney's motorcycle, this conduct would constitute "deadly force" and would violate Mr. Abney's Fourth Amendment right to be free from unreasonable seizures.  (<u>Id.</u> at 16-18.)  The Magistrate Judge then found that it was clearly established at the time of the incident in question

that the use of deadly force against Mr. Abney violated his Fourth Amendment rights. (Id. at 19-20.) The Defendants object to this finding, arguing that Deputy Coe could have concluded that the use of deadly force against Mr. Abney was constitutionally permissible under the law as it existed at the time of the incident in question. They claim that Deputy Coe "believed that deadly force was permitted in this case because Mr. Abney, while eluding arrest, endangered the lives of others and continuously posed a threat to the public." (Def.'s Obj. 3.)

Under the second prong of the qualified immunity analysis, a court must determine whether the "state of the law" at the time of the events in question gave the officer "fair warning" that his alleged treatment of the plaintiff was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (2002); see also Waterman v. Batton, 393 F.3d 471, 476 (4th Cir. 2005) ("Although the exact conduct at issue need not have been held unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest."). Thus, the relevant inquiry in this case is whether the law was sufficiently clear to provide Deputy Coe with "fair notice" that the use of deadly force, that is, intentionally striking a motorcycle with a patrol car, under the circumstances at hand was unlawful.

In Tennessee v. Garner, the Supreme Court held that the use of deadly force to stop a fleeing suspect would be reasonable only if the officer had probable cause to believe: (1) the suspect posed a threat of serious physical harm to the

12

officer, (2) the suspect posed a serious threat to others, or (3) the suspect had committed a serious violent crime.  471 U.S. 1, 11 (1985).  The Defendants argue that under <u>Martin v. Dishong</u>, 2004 WL 1535175 (4th Cir. July 9, 2004), Deputy Coe had probable cause to believe that Mr. Abney posed a danger to others.  In <u>Dishong</u>, the Fourth Circuit held that an officer was entitled to qualified immunity for employing deadly force against a suspect who posed a danger to others.  <u>Id.</u> at *3.  Officer Dishong shot the suspect when he attempted to flee from a corral of police vehicles after leading the police on a high speed car chase through a residential neighborhood.  <u>Id.</u>  The court found that the officer reasonably concluded that the suspect posed a danger to others because he "could have resumed his risky flight" if allowed to escape.  <u>Id.</u>

The facts of <u>Dishong</u> are distinguishable from those of the present case.  In <u>Dishong</u>, the suspect had previously undertaken a "high speed flight through a residential neighborhood."  <u>Id.</u>  Neither of these factors are present in this case. Rather, two eyewitnesses, Kimberly Deyton and Deputy Jerry Rozier, have testified that the two vehicles were not traveling at high speeds.  (K. Deyton Dep. 11, 14; J. Rozier Dep. 54, 60.)[4]  In addition, both parties have described the area in which the chase occurred as primarily rural in nature.  (<u>See</u> Def.'s Reply 9; Pl.'s Resp.

---

[4] Deputy Rozier's deposition is attached to Defendant Coe's Brief in Support of Motion for Summary Judgment [Doc. # 41].  Ms. Deyton's deposition is attached Exhibit 8 to the Appendix Memorandum to Plaintiff's Response to Defendant Coe's Motion for Summary Judgment [Doc. # 56].

10.)[5]  Thus, Dishong does not change the analysis in this case.

Moreover, at the time Deputy Coe struck Mr. Abney's motorcycle on Mount Shepherd Road, he had witnessed Mr. Abney commit three traffic violations: (1) Mr. Abney crossed over the double yellow line on Old Country Farm Road as he passed several vehicles; (2) Mr. Abney ran a stop sign at the intersection of Green Farm Road and Old Lexington Road; and (3) Mr. Abney ran a stop sign at the intersection of Old Lexington Road and Highway 64.[6]  (Coe Dep. 49, 51-52.)[7]  As the Magistrate Judge noted, these violations certainly justified the initiation and continuation of the pursuit.  (Recommended Ruling 18.)  However, the Defendants have not provided the Court with any authority or evidence that supports the proposition that these three traffic violations could have provided Deputy Coe with probable cause to believe that Mr. Abney posed a serious threat to others.[8]

---

[5] Doc. #s 69 & 97.

[6] In their Objections, the Defendants refer to an incident where Abney is alleged to have run Thomas and Dorothy White's car off the road.  (Def.'s Obj. 5.)  However, this incident was not known to Deputy Coe at the time of the chase and thus is not relevant to this inquiry.  See Waterman v. Batton, 393 F.3d 471, 477 (4th Cir. 2005) ("[R]easonableness is determined based on the information possessed by the officer at the moment that force is employed.").  In addition, the Defendants contend that Abney sideswiped Deputy Coe's vehicle during the chase.  However, this version of events is sharply disputed by two eyewitnesses.  (See A. Rush Dep.; T. Rush Dep. [Doc. # 56].)

[7] Deputy Coe's deposition is attached to Defendant Coe's Brief in Support of Motion for Summary Judgment [Doc. # 41].

[8] The remaining cases cited by Defendants involve particularly egregious conduct on the part of the fleeing suspect and thus are also distinguishable from the present case.  See Pace v. Capobianco, 283 F.3d 1275 (11th Cir. 2002)

Accordingly, the Court adopts the Recommendation of the Magistrate Judge and denies Deputy Coe's Motion for Summary Judgment in his individual capacity as to the claims in Counts I, II, and III of the First Amended Complaint.

The Defendants also contend that because Mr. Abney posed a serious danger to others, Deputy Coe is entitled to public officer's immunity for the state law claims asserted by the Plaintiff in Counts VII and IX of the First Amended Complaint. However, as discussed above, the Defendants have not pointed to evidence from which a reasonable officer could conclude that Mr. Abney posed a serious threat to others. Therefore, the Court will also adopt the Recommendation of the Magistrate Judge that Deputy Coe's Motion for Summary Judgment be

_____

(suspect led police on a night-time high-speed chase in which he (1) turned in front of oncoming police cars, (2) swerved at police cars coming towards him from the opposite direction, (3) drove off the road onto someone's front yard at 50-60 mph, (4) drove on wrong side of road almost hitting elderly motorist, (5) nearly hit other motorists, and (5) accelerated towards patrol car trying to block the road causing officer to move car in order to avoid collision); Scott v. Clay County, Tenn., 205 F.3d 867 (6th Cir. 2000) (officer saw suspect race erratically through intersection with tires squealing, weave off the road, and miss stop sign at high speeds during late evening; police officer followed subject who led police on over 20 minute chase at speeds of 85 to 100 mph, forced at least one motorist off the road, crossed yellow line, crashed into roadside guardrail, restarted his car, drove in direction of officer approaching on foot forcing him to dive out of the way, and tried to return to road); Smith v. Freeland, 954 F.2d 343 (6th Cir. 1992) (suspect led police onto high speed case (at 90 mph) into a residential area, attempted to ram police car with vehicle, came to a stop at a dead end, turned around, smashed an unoccupied police car that blocked his path, and tried to drive off); Reid v. Ford, 2005 WL 2898058 (M.D.N.C. Mar. 11, 2005) (plaintiff (1) led officers on high speed chase lasting over ten minutes and involving several patrol cars, (2) ran off road several times in residential neighborhood, (3) attempted to ram patrol cars with his vehicle, and (4) was suspected of a serious crime).

15

denied as to Counts VII and IX.

B.

The Defendants also contend that the Magistrate Judge improperly considered the testimony of Angela and Terry Rush. These witnesses testified that they saw Deputy Coe "bump" Mr. Abney's motorcycle at an earlier point in the pursuit on Green Farm Road. (<u>See</u> A. Rush Dep.; T. Rush Dep. [Doc. # 56].) The Defendants make the following objections regarding this testimony: (1) the testimony of Angela and Terry Rush is "mere speculation" and is thus inadmissible and (2) even if this evidence was properly considered, the Magistrate Judge incorrectly linked this collision to the second collision on Mount Shepherd Road.[9]

The Defendants argue that Angela and Terry Rush "were too far away to see Deputy Coe's reaction or demeanor inside his patrol car" and thus, the testimony of these witnesses "is not rationally based on their perception." (Def.'s Obj. 9.) However, the Magistrate Judge did not rely on any statements these witnesses may have made regarding Deputy Coe's intent. Instead, he found that these two eyewitnesses testified that they saw Deputy Coe's vehicle "bump" Mr. Abney's

---

[9] The Defendants also contend that (1) the testimony of Richard Hunt is inadmissible and (2) the Magistrate Judge incorrectly characterized Mr. Hunt's testimony. (Def.'s Obj. 11.) However, beyond their bald assertion that Mr. Hunt's testimony is not admissible because it is "mere speculation," they have not provided any basis for this objection. The basis for their second objection is also unclear as the Magistrate Judge quoted directly from the portion of Mr. Hunt's deposition that the Defendants' reference in their Objection. (<u>See</u> Recommended Ruling 15 n.3.)

16

motorcycle on Green Farm Road. (See Recommended Ruling 4, 14-15.) The Defendants have not pointed to any evidence tending to show that the distance between the Rushes and Deputy Coe was so great that, as a matter of law, the Rushes could not accurately report what they observed. Thus, the Magistrate Judge properly considered this testimony.

The Defendants next argue that the Magistrate Judge "incorrectly formed a causal link between the collision on Green Farm Road and the fatal crash . . . ." (Def.'s Obj. 10.) They contend that even if the Rushes' testimony is admissible, "[t]he incident on Green Farm Road is not relevant in deciding what occurred miles later on Mount Shepherd Road." (Def.'s Reply 7.) However, on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1896). The Plaintiff has presented the following evidence in support of her claim that Deputy Coe intentionally struck Mr. Abney's motorcycle at the time of the fatal collision: (1) eyewitness testimony that Deputy Coe "bumped" Mr. Abney's motorcycle on Green Farm Road, (2) eyewitness testimony that it appeared Deputy Coe intentionally struck the motorcycle on Mount Shepherd Road, 3) eyewitness testimony that, contrary to Deputy Coe's version of events, there was no third vehicle present on Mount Shepherd Road at the time of the collision, (4) eyewitness testimony that the motorcycle was not wobbling prior to the impact, and (5) the absence of skid marks on Mount

17

Shepherd Road.  Taken together, this evidence reasonably supports an inference that the striking of Mr. Abney's motorcycle on Mount Shepherd Road was intentional.

The Court therefore finds that the Magistrate Judge (1) did not err in considering the testimony of Angela and Terry Rush and (2) correctly found that the Plaintiff had provided sufficient evidence (including the evidence of the first "bumping" on Green Farm Road) to create a genuine issue of material fact as to whether Deputy Coe intentionally struck Mr. Abney's motorcycle on Mount Shepherd Road.

V.

The plaintiff, Jeanette René Abney, has also filed objections to portions of the Magistrate Judge's Recommended Ruling [Doc. # 95].  Ms. Abney contends that she has submitted enough evidence to survive summary judgment on two of her claims against Sheriff Hurley.  In particular, she argues that (1) the Magistrate Judge "did not address and make any recommendations" regarding her claim that Sheriff Hurley failed to promulgate a vehicular pursuit policy and (2) the Magistrate Judge incorrectly found that there did not exist a genuine issue of material fact concerning her claim that Sheriff Hurley failed to train his officers on how to terminate motor vehicle pursuits.  (Pl.'s Obj. 2.)

However, the Magistrate Judge examined at some length the issue of whether Sheriff Hurley promulgated a vehicular pursuit policy and found that there

18

was a general awareness of this policy among the officers of the Randolph County

Sheriff's Department.  (See Recommended Ruling 7-8.)  Although Ms. Abney notes

that one officer was not aware of a vehicular pursuit policy (Hines Dep. 16), at

least six different officers testified that they were aware of such a policy (Hurley

Dep. 40-41; Blakely Dep. 27; McNeill Dep. 12, 76; Craven Dep. 29-30; Bunting

Dep. 20-22, 29; Brady Dep. 74-75).[10]  Thus, the Magistrate Judge correctly

concluded that the Plaintiff failed to create a genuine issue of material fact on this

question.

    Ms. Abney next claims that the Magistrate Judge incorrectly found that

there was "a collective understanding among officers in the Randolph County

Sheriff's Department that the ramming of fleeing suspects' vehicles was not

allowed." (Pl.'s Obj. 6.)  She contends that she has presented sufficient evidence

to create a genuine issue of material fact that Sheriff Hurley failed to train his

officers on how to terminate vehicular pursuits.  (Id.)  However, "[a] municipality's

failure to train its officers can result in liability under § 1983 only when such failure

reflects deliberate indifference to the rights of its citizens."  Doe v. Broderick, 225

F.3d 440, 456 (4th Cir. 2000) (citing City of Canton v. Harris, 489 U.S. 378, 388

(1989)).  In order to establish "deliberate indifference," a plaintiff must prove that

the unconstitutional practice is "persistent and widespread."  Carter v. Morris, 164

---

    [10] The pleadings to which these depositions are attached are identified in the
Recommended Ruling.  (See Recommended Ruling 8.)

F.3d 215, 218 (4th Cir. 1999).  Proof of a single incident of unconstitutional

activity is not sufficient to impose liability.  City of Oklahoma City v. Tuttle, 471

U.S. 808, 823-24 (1985).  In addition, "a plaintiff cannot rely upon scattershot

accusations of unrelated constitutional violations to prove . . . that a municipality

was indifferent to the risk of [a] specific injury . . . ."  Carter, 164 F.3d at 218.

Instead, he or she must show that the municipality was deliberately indifferent to

the risk that a *particular* constitutional right would be violated.  Id.; see also City of

Canton, 489 U.S. at 391 ("[T]he identified deficiency in a city's training program

must be closely related to the ultimate injury.").

 In this case, Ms. Abney was only able to point to one other incident

involving an officer with the Randolph County Sheriff's Department where the

alleged conduct of that officer was remotely similar to the facts of this case.  In

that incident, a fleeing suspect braked suddenly, causing the officer, Captain

Brady, to lightly impact the rear of the suspect's car.  (Brady Aff. ¶ 2.)[11]  This

contact did not cause any damage to the car and did not result in a complaint.

(Id.)  Not only is this incident factually dissimilar to the case at hand, it is not

sufficient to demonstrate a "widespread and persistent" practice of ramming the

vehicles of fleeing suspects.

 Even assuming that Sheriff Hurley failed to train his officers on the proper

---

[11] The officer's affidavit is attached as Exhibit 1 to Sheriff Hurley's Reply
[Doc. # 70].

Case 1:04-cv-00652-NCT   Document 104   Filed 04/25/06   Page 20 of 21

termination of vehicular pursuits, Ms. Abney has not shown that the practice of ramming the vehicles of fleeing suspects was persistent and widespread among the officers of the Randolph County Sheriff's Department.  Thus, she has not presented enough evidence to create a genuine issue of material fact as to whether Sheriff Hurley was deliberately indifferent to the need to train his officers on the unconstitutionality of this practice.  Therefore, the Magistrate Judge correctly concluded that Sheriff Hurley was entitled to summary judgment on Plaintiff's claim that he failed to train his officers on the proper termination of vehicular pursuits.

VI.

For the reasons set forth above, the Court, after conducting a *de novo* review of those issues to which the parties have made objections, will adopt the Recommended Ruling of the Magistrate Judge.  In addition, Plaintiff's Motion to Strike the Defendants' Objections to the Recommended Ruling [Doc. # 98] will be DENIED.

This the day of April 25, 2006

    /s/ N. Carlton Tilley, Jr.
United States District Judge

21